IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KENNETH KOVAC,<br><br>Plaintiff,<br><br>v.<br><br>THE VILLAGE OF ORLAND PARK,<br><br>Defendant. | Case No. 25-cv-02696<br><br>Judge Joan B. Gottschall<br><br>JURY DEMANDED |

# FIRST AMENDED COMPLAINT

Plaintiff Kenneth Kovac complains against Defendant the Village of Orland Park (the "Village") as follows:

## INTRODUCTION

1. This is a civil rights lawsuit. Plaintiff, retired Orland Police Sergeant Kenneth Kovac, asserts a conspiracy to violate his rights under the First and Fourth Amendments to the United States Constitution and state common law. Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 and 1988, 28 U.S.C. § 2201, *et seq.*, and the laws of the State of Illinois. Plaintiff seeks declaratory and injunctive relief, as well as monetary damages.

2. Plaintiff initially brought this lawsuit against the Village and individual defendants Eric Rossi, Brian West, Douglas Kein, Kenneth Rosinski, and William Fitzgibbon. On October 7, 2025, the parties entered into a settlement agreement, wherein Plaintiff agreed to dismiss the claims against the individual defendants before settling with the Village. With Defendants' consent, Plaintiff brings this

amended complaint to remove the individual defendants from the lawsuit and to dismiss the claims asserted against them.

3. In January 2024, concerned about abuses of power within the Orland Park Police Department, Plaintiff created a Facebook page to parody then-Deputy Chief of Police Defendant Brian West. The profile name on the page was "Bryan East." Plaintiff used a photograph of Defendant West as the page's profile picture, under which Plaintiff posted: "I often get confused with an Orland employee. Not me. I work for Orange Julius in Ford City Mall."

4. The Facebook page jokingly portrayed West as a simplistic and overly enthusiastic supporter of Village Mayor Keith Pekau. The page's cover photograph, for example, displayed a "Keith Pekau for Mayor banner," and Plaintiff posted a series of comments as "Bryan East" on the Village's Facebook page praising Mayor Pekau. None of the comments were in any way threatening.

5. Defendant West did not appreciate or enjoy the parody page, which he suspected Plaintiff of operating. Defendant West responded to the Facebook posts by working with the other Defendants to shut down the parody page and to investigate, arrest, and criminally charge Plaintiff for exercising his right to make non-threatening posts online from an obvious parody page. Defendants' efforts resulted in Plaintiff's arrest and prosecution for false personation and disorderly conduct, alleged crimes for which Plaintiff faced up to one year of imprisonment. The Circuit Court of Cook County dismissed both charges for failure to state an offense.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 1343 and 1367.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

## PARTIES

8. Plaintiff Kenneth Kovac is a former Orland Park Police Sergeant. He is a resident of Orland Park, Illinois.

9. Defendant the Village of Orland Park (the "Village") is a municipal corporation under the laws of the State of Illinois and operates the Village of Orland Park Police Department.

10. Former Defendant Eric Rossi ("Defendant Rossi") is now and was at the time of the events complained of herein the Chief of Police of the Village of Orland Park Police Department, and thereby an individual with final policymaking authority on matters involving police conduct. Defendant Rossi is sued in his individual capacity.

11. Former Defendant Brian West ("Defendant West") is the Interim Assistant Village Manager of the Village of Orland Park. Defendant West was at the time of the events complained of herein the Deputy Chief of the Village of Orland Park Police Department. Defendant West is sued in his individual capacity.

12. Former Defendant Kenneth Rosinski ("Defendant Rosinski") is and was at the time of the events complained of herein the Commander of the Investigations Division of the Village of Orland Park Police Department. Defendant Rosinski is sued in his individual capacity.

13. Former Defendant Douglas Kein ("Defendant Kein") is and was at the time of the events complained of herein a Sergeant in the Village of Orland Park Police Department. Defendant Kein is sued in his individual capacity.

14. Former Defendant William Fitzgibbon ("Defendant Fitzgibbon") is and was at the time of the events complained of herein a Lieutenant in the Village of Orland Park Police Department. Defendant Fitzgibbon is sued in his individual capacity.

15. At all times relevant to this complaint, all Defendants were acting under color of state law, and their conduct constituted state action.

**FACTS**

***The Parody Facebook Page***

16. In January 2024, Plaintiff created a Facebook page to parody Defendant West.

17. As the Deputy Chief of Police at the time, Defendant West was a public official.

18. The profile name for the parody page was "Bryan East," and the page's profile picture was an unflattering photograph of Defendant West. A post under the profile picture stated: "I often get confused with an Orland employee. Not me. I work for Orange Julius in Ford City Mall." The page's cover photograph displayed a "Keith Pekau for Mayor" banner.[1]

---

[1] Plaintiff technically created two Facebook pages parodying Defendant West in January 2024, but he deleted the first page shortly after its creation at approximately the time that he created the second page. The profile picture for both

19. On January 14 and 15, Plaintiff used the Bryan East profile to post the following innocuous comments on the Village's Facebook page—comments that lampooned West as a simple-minded, enthusiastic supporter of Village Mayor Keith Pekau:

- Commenting "Kieth is the best!" on a Village post about a winter storm;
- Commenting "Brrrrrr" on a Village post about cold weather;
- Commenting "Love the Mayor and some breakfast!" on a Village post about a breakfast with the Mayors;
- Commenting "What a great thing. Kudos to Mayor Pekau for this phenomenal event!" on photographs of a job fair uploaded to the Village's page;
- Commenting "What a great event! The Mayor has great visions on the parks and the Centennial area for concerts that's for sure!" on photographs of the breakfast with the Mayors uploaded to the Village's page;
- Commenting "It's soooo cold out there! What a great thing that the police department and the city of Orland is doing here" on a Village post about cold weather; and
- Commenting "Dam, I missed it!" on a Village post about breakfast with the Mayors.

20. Plaintiff deleted the parody page within approximately one week after creating it.

---

pages depicted Defendant West, and both profiles used the name "Bryan East." For the sake of simplicity, Plaintiff treats the two pages as a single Facebook page throughout this Complaint.

21. Given the profile name, the choice of photographs for the profile picture, the representation that the page's operator was an "Orange Julius" employee, and the generally silly nature of the page's posts and comments, nobody who viewed the "Bryan East" Facebook page would confuse "Bryan East" with the actual Defendant West.

***The Village's Investigation***

22. The Bryan East parody page annoyed and angered Defendant West, so he decided to use his position of authority as Deputy Chief of Police to get even.

23. Defendant West met with Defendant Rossi and requested permission to initiate an investigation into the Facebook page and to bypass the usual procedure by which patrol officers initially review complaints so that the complaint could be fast-tracked to an investigator. Defendant Rossi granted those permissions.

24. On January 15, 2024, Defendant West met with then-Detective Defendant Kein. Defendant West told Defendant Kein that he suspected Plaintiff was behind the Facebook page, and he directed Defendant Kein to initiate a criminal investigation.

25. The following week, on January 23, 2024, Defendant West held a meeting for Village Police Department supervisors. He told the supervisors that he knew Plaintiff had created the Bryan East page and ominously warned them that "[Plaintiff] is not your friend" and "you should not be friends with [Plaintiff]."

26. In furtherance of Defendant West's vindictive investigation, on January 31, 2024, Defendant Kein submitted applications for three search warrants to the

Cook County State's Attorney's Office ("CCSAO") for "information stored at AT&T and Facebook."

27. The search warrant applications contained material omissions and misrepresentations:

a. The applications did not acknowledge that the Facebook page was a parody, which was obvious from the profile name and from the representation that the profile user worked for "Orange Julius."

b. Though the applications stated that the page used an "offset" of Defendant West's name, it failed to acknowledge that the last name used ("East") was an entirely different from Defendant West's last name.

c. Rather, the applications falsely stated that someone was "creating fraudulent Facebook pages in [Defendant West's] name."

d. In order to obtain a judicial search warrant, the applications misrepresented that the Village was searching for violations of the felony crime of cyberstalking despite having no evidence that the user of the parody page was engaging in cyberstalking conduct with respect to Defendant West.

28. Based on the misleading warrant applications, a Cook County Circuit Court judge issued search warrants, pursuant to which, on information and belief, Defendants obtained and reviewed Plaintiff's personal communications, information, and other data.

29. On March 18, 2024, a communication from Comcast in response to a search warrant indicated that the IP addresses included in the search warrant were registered to an account assigned to Plaintiff.

30. With the permission of Defendant Rossi, on March 27, 2024, Deputy Chief West signed two criminal complaints against Mr. Kovac related to the Bryan East Parody Page.

31. Though Defendant Kein knew the complaints were legally baseless, he called Plaintiff that same day to tell him to come to the police station. When Plaintiff asked why, Defendant Kein replied: "This Facebook bullshit." Defendant Kein informed Plaintiff that he was in possession of two signed criminal complaints against him for False Personation and Disorderly Conduct. When Plaintiff asked if he was joking, Defendant Kein responded: "I'm caught between a rock and a hard place." In other words, Defendant Kein knew it was wrong and unlawful to arrest Plaintiff, but he believed it would be in his interest go along with his supervisor's orders. Plaintiff declined the invitation to come to the police station and contacted a defense attorney.

32. The following day, Plaintiff's criminal defense attorney called Defendant Kein, informed him that he was representing Plaintiff, and expressly warned that Plaintiff's Facebook activities were protected under the First Amendment and that the Village would subject itself to "civil liability" by taking criminal action against Plaintiff. Plaintiff's attorney advised further that the Village should consult with its own attorney and with the CCSAO before proceeding.

33. Despite Defendant Kein's reservations about charging Mr. Kovac over the "Facebook bullshit," he continued with the investigation.

34. Defendant Kein's supervisors, however, did not abandon their consciences so easily. Believing Plaintiff's arrest for social media posts would be wrong and unlawful, Defendant Kein's immediate supervisor Sergeant Richard Whalen refused to sign off on Defendant Kein's investigation reports. So, too, did Whalen's immediate supervisor Lieutenant Richard Stoettner.

35. Despite the protests of Sergeant Whalen and Lieutenant Stoettner, and over their objections, Defendant Commander of Investigations Kenneth Rosinski signed off on Defendant Kein's investigation report and on the investigation and arrest of Plaintiff generally. Defendant Lieutenant William Fitzgibbon likewise approved and signed off on a version of Detective Kein's investigation report.

36. On information and belief, Defendant Rossi communicated with and supported Defendants West and Kein throughout the investigation and, as Chief of Police and direct supervisor of Defendant West, approved Plaintiff's arrest and prosecution.

37. Shortly after Plaintiff's arrest, the Village promoted Detective Kein to the rank of Sergeant.

*The Arrest and Prosecution of Mr. Kovac*

38. Understanding that the Village was determined to proceed with his unlawful arrest and prosecution, Plaintiff surrendered at the Orland Park police station on the morning of April 7, 2024.

39. When Plaintiff arrived at the station, a police lieutenant searched him, turned him over to a detention aid for processing, and then handed Plaintiff paperwork before releasing him. The paperwork Plaintiff received included signed criminal complaints indicating that he had been charged with (a) False Personation in alleged violation of 720 ILCS 5/17-2(a)(2.5)(A), a Class A misdemeanor with potential penalties including up to 364 days of imprisonment, and (b) Disorderly Conduct in alleged violation of 720 ILCS 5/25-1, a Class C misdemeanor with potential penalties including up to 30 days of imprisonment.

40. In a press release announcing the charges, the Village falsely intimated that Plaintiff had sent a "glitter bomb" to Defendant West at the Police Department and had made a spoof call to a suicide prevention hotline pretending to be Defendant West. The Village made that false intimation without having investigated either alleged incident.

41. Plaintiff's criminal case dragged on for months, as the CCSAO prosecutors struggled to come up with specific facts to bolster the threadbare allegations in the complaints Defendant West had signed. When the CCSAO finally complied with the criminal court's order for a bill of particulars in October 2024, the pleading merely alleged that Plaintiff had created the Bryan East Facebook page and posted the comments discussed above.

42. On January 15, 2025, more than nine months after the Village arrested and charged Plaintiff, the Circuit Court of Cook County dismissed the criminal complaints in their entirety for failure to state an offense.

43. After the charges were dismissed, the Village stood by its conduct and released a statement blaming the CCSAO for "failing in its responsibility to protect [Defendant] West as a victim of these malicious acts." In the statement, the Village added that it was "deeply disappointed by this outcome and stands unwavering in its support of [Defendant] West."

44. At no time did Defendants have probable cause to arrest Plaintiff. Defendants lacked probable cause both because there was no evidentiary basis to suspect Plaintiff had engaged in conduct satisfying the elements of either crime for which he was charged (or of any other crime) and because the conduct for he which was purportedly arrested and charged—creating and posting from a Facebook page parodying a public official—is protected under the First Amendment.

45. At the time of Plaintiff's arrest, it was well established that the First Amendment protects speech parodying public officials and that it is unconstitutional to arrest or prosecute an individual for speech that is not threatening, inciting, defamatory, fraudulent, or otherwise outside the scope of First Amendment protection.

46. Each of the Defendants personally participated in the unlawful conduct described herein which deprived Plaintiff of his constitutional rights, acted jointly and in concert with the other Defendants who participated in or acquiesced to the unlawful conduct, failed to intervene or stop other Defendants from engaging in the unlawful conduct though possessing the power to do so, or knew or and condoned or approved of the unlawful conduct.

47. Each Defendant acted knowingly and intentionally, willfully and wantonly, or with reckless or callous disregard for, or with deliberate indifference, or with bad faith, or with malice to Plaintiff's rights.

48. Defendants' unlawful conduct described herein directly and proximately caused Plaintiff to suffer mental and emotional distress, discomfort, damage to reputation, financial costs in the form of attorney fees, and deprivation of his constitutional rights.

49. Because the Village continues to maintain publicly that the actions taken against Plaintiff were lawful and proper, Plaintiff remains in danger of being punished for exercising his right to free expression if he engages in the future in speech that the Village or any of its officials deem objectionable.

## CLAIMS FOR RELIEF

### COUNT ONE: First Amendment

50. Plaintiff repeats and re-alleges the paragraphs above.

51. The actions of the Village described herein violate the rights of Plaintiff to freedom of expression as guaranteed by the First Amendment of the United States Constitution.

52. Plaintiffs asserts a cause of action for violation of his First Amendment rights pursuant to 42 U.S.C. § 1983.

### COUNT TWO: Fourth Amendment

53. Plaintiff repeats and re-alleges the paragraphs above.

54. The actions of the Village described herein violate the rights of Plaintiff to be free from unreasonable searches, seizures, and invasions of privacy guaranteed by the Fourth Amendment of the United States Constitution.

55. Plaintiffs asserts a cause of action for violation of his Fourth Amendment rights pursuant to 42 U.S.C. § 1983.

**COUNT THREE: Conspiracy to violate the First and Fourth Amendments**

56. Plaintiff repeats and re-alleges the paragraphs above.

57. The actions of the Village described herein constitute a conspiracy that caused the violation of Plaintiff's right to freedom of expression and freedom from unreasonable searches, seizures, and invasions of privacy as guaranteed by the First and Fourth Amendments of the United States Constitution.

58. Plaintiff asserts a cause of action for conspiracy in violation of his First Fourth Amendment rights pursuant to 42 U.S.C. § 1983.

**COUNT FOUR: State Tort of False Arrest**

59. Plaintiff repeats and re-alleges the paragraphs above.

60. In the manner described more fully above, the Village caused Plaintiff to be arrested against his will without justification.

61. The Village caused Plaintiff to be arrested despite its knowledge that there was no warrant, probable cause, or other lawful justification for doing so.

62. The Village's actions were undertaken intentionally, with malice and reckless indifference to Plaintiff's rights, and for the malicious purpose of retaliating against Plaintiff.

63. The Village's misconduct was undertaken by the Individual Defendants within the scope of their employment such that their employer, the Village, is liable for their actions.

## COUNT FIVE: State Tort of Malicious Prosecution

64. Plaintiff repeats and re-alleges the paragraphs above.

65. As described more fully above, the Village's actions caused the commencement of an original criminal proceeding against Plaintiff.

66. The Village caused the commencement of an original criminal proceeding against Plaintiff despite its knowledge that there was no probable cause or other lawful justification for doing so.

67. The Village's actions were undertaken intentionally, with malice and reckless indifference to Plaintiff's rights, and for the malicious purpose of retaliating against Plaintiff.

68. The Village's commencement of an original criminal proceeding against Plaintiff proximately caused Plaintiff mental and emotional distress, discomfort, damage to reputation, and financial costs in the form of attorney fees.

69. The criminal proceeding was terminated in Plaintiff's favor when the Circuit Court of Cook County dismissed the charges against him.

## COUNT SIX: Indemnification

70. Plaintiff repeats and re-alleges the paragraphs above.

71. Defendant the Village was the employer of Defendants Rossi, West, Kein, Rosinski, and Fitzgibbon at all times relevant to this complaint.

72. Defendants Rossi, West, Kein, Rosinski, and Fitzgibbon committed the acts alleged herein in the scope of their employment as employees of the Village.

73. The Village is liable for any amount awarded to him against the Individual Defendants as damages, attorney fees, costs and interest, or for any settlement entered into between Plaintiff and the Individual Defendants pursuant to 745 ILCS 10/9-102.

## COUNT SEVEN: *Monell* Liability

74. Plaintiff repeats and re-alleges the paragraphs above.

75. The actions of Defendant Rossi directly caused Plaintiff's unlawful arrest and prosecution.

76. Defendants Rossi is an individual with final policymaking authority under municipal law regarding the conduct of Village police officers.

77. Because Rossi's deliberate acts caused Plaintiff's unlawful arrest and prosecution, the Village is liable for the violations of Plaintiff's First and Fourth Amendment rights, as described more fully above, under 42 U.S.C. § 1983.

## COUNT EIGHT: Respondeat Superior

78. Plaintiff repeats and re-alleges the paragraphs above.

79. Defendant the Village was the employer of Defendants Rossi, West, Kein, Rosinski, and Fitzgibbon at all times relevant to this complaint.

80. Defendants Rossi, West, Kein, Rosinski, and Fitzgibbon committed the acts alleged herein in the scope of their employment as employees of the Village.

81. The Village is liable as principal for all state torts committed by its agents and is therefore liable to Plaintiff for any amount awarded to him against the Individual Defendants as damages, attorney fees, costs and interest, or for any settlement entered into between Plaintiff and the Individual Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A. A declaratory judgment that the Village conspired to and violated Plaintiff's right to freedom of expression and his right to be free from unreasonable searches, seizures, and invasions of privacy guaranteed by the First and Fourth Amendments of the United States Constitution.

B. A declaratory judgment that the Defendant Village is liable to Plaintiff for any amount awarded to him against the Individual Defendants as damages, attorney fees, costs and interest, and/or for any settlement entered into between the Plaintiff and the Individual Defendants pursuant to 745 ILCS 10/9-102.

C. Permanent injunctive relief prohibiting the Village, its officers, agents, employees, and all persons in active concert or participation with the Village from engaging in future efforts to suppress, or retaliate in response to, constitutionally protected speech that the Village or its officials deem objectionable.

D. Compensatory damages in an amount to be ascertained at trial for the unlawful suppression of and retaliation against Plaintiff's freedom of expression and for his unlawful arrest and prosecution.

F. Reasonable attorney fees, expert fees, and the costs and expenses of this litigation.

G. All other and further relief as may be appropriate.

## JURY DEMAND

Plaintiff demands trial by jury on all issues for which a jury trial is allowed.

Dated: October 21, 2025

Respectfully submitted,

/s/ Justin Tresnowski

CHRISTOPHER WILMES
cwilmes@hsplegal.com
JUSTIN TRESNOWSKI
jtresnowski@hsplegal.com
HUGHES SOCOL PIERS RESNICK & DYM, LTD.
70 W. Madison Street, Suite 4000
Chicago, IL 60602
(312) 580-0100
(312) 580-1994 (Fax)

*Attorneys for Plaintiff*